IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| IN RE: | HEALTH DIAGNOSTIC LABORATORY, INC., *et al.*, | Case No. 15-32919 Chapter 11 (Jointly Administered) |
| | Debtors. | |

RICHARD ARROWSMITH, as Liquidating
Trustee of the HDL Liquidating Trust,

Plaintiff,

v.

AP No. 17-04300

G. RUSSELL WARNICK, LATONYA S. MALLORY,
ROBERT BRADFORD JOHNSON, FLOYD CALHOUN
DENT, III *et al.*

Defendants.

_____

## **MEMORANDUM OPINION**

Before the Court in this adversary proceeding (the "Adversary Proceeding") is a Motion

to Dismiss[1] filed by the Golias Defendants[2] in response to the Amended Adversary Complaint[3]

of Richard Arrowsmith in his capacity as Liquidating Trustee of the Health Diagnostic

---

[1]  Mot. of Defs. Tipton Golias, Joseph Golias, Donald Golias, Karla Falgout, Tipton Golias in his Capacity as Trustee of the Wyndell L. Golias Voting Trust, Robert S. Galen, Noel D. Bartlett, Jr., Eric Petersen, David Mayes, John Tessler, & Pamela Oates to Dismiss, ECF No. 73 ("Motion to Dismiss").

[2]  The Golias Defendants include two groups: (1) Tipton Golias, Joseph Golias, Donald Golias, Karla Falgout, Tipton Golias in his capacity as Trustee of the Wyndell L. Golias Voting Trust, Eric Petersen, David Mayes, John Tessler, and Pamela Oates (the "Golias Family Shareholder Defendants"); and (2) Robert S. Galen ("Galen") and Noel D. Bartlett, Jr. ("Bartlett" and, together with Galen, the "Director Defendants") who were both shareholders in and directors of Health Diagnostic Laboratory, Inc. ("HDL").  The Golias Family Shareholder Defendants and the Director Defendants are collectively referred to as the "Golias Defendants."

[3]  Am. Adversary Compl., ECF No. 63 ("Amended Tax Complaint").

1

Laboratory, Inc. Liquidating Trust.[4]  The Motion to Dismiss is brought pursuant to Rules 7008

and 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rule(s)").  The issue

presented by the Motion to Dismiss is whether the Amended Tax Complaint offers sufficient

facts to present plausible claims upon which relief can be granted.  A hearing on the Motion to

Dismiss took place on August 15, 2018, at which time the Court took the matter under

advisement.  For the reasons set forth below, the Court will deny the Motion to Dismiss with

respect to all six Counts of the Amended Tax Complaint.

### Jurisdiction and Venue

The United States Bankruptcy Court for the Eastern District of Virginia (the "Court") has

subject matter jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and

1334 and the General Order of Reference from the United States District Court for the Eastern

District of Virginia dated August 15, 1984.  The Liquidating Trustee asserts that this is a core

proceeding by virtue of 28 U.S.C. § 157(b)(2)(A), (E), and (O) as it concerns the administration

of the Debtors' Bankruptcy Estates, seeks turnover of the Bankruptcy Estates' property, and

affects the liquidation of the Bankruptcy Estates' assets.  The Court retained jurisdiction over

such proceedings in section 11.1 of the Plan and paragraph 65 of the Confirmation Order.[5]

---

[4]  On May 12, 2016, the Court entered an order confirming the Modified Second Amended Plan of Liquidation (the "Plan") of HDL, Central Medical Laboratory, LLC, and Integrated Health Leaders, LLC (collectively, the "Debtors").  *See* Order Confirming Debtors' Plan of Liquidation Under Chapter 11 of the Bankr. Code, *In re Health Diagnostic Lab., Inc.*, No. 15-32919-KRH (Bankr. E.D. Va.), ECF No. 1095 ("Confirmation Order"); *see also* Plan, *In re Health Diagnostic Lab., Inc.*, No. 15-32919-KRH (Bankr. E.D. Va. Mar. 25, 2016), ECF No. 995.  The Confirmation Order substantively consolidated the Debtors' jointly administered Chapter 11 bankruptcy estates (the "Bankruptcy Estates").  The HDL Liquidating Trust was formed pursuant to the terms of the Plan.  Through the Plan and the trust agreement executed to implement the Plan, the HDL Liquidating Trust became the successor of the Debtors and the statutory committee of unsecured creditors appointed under section 1102 of the Bankruptcy Code (the "Committee").  The Plan named Richard Arrowsmith the Liquidating Trustee of the HDL Liquidating Trust and charged him with the duty to pursue claims on behalf of the Debtors, the Bankruptcy Estates, and the Committee. *See* Confirmation Order at 81–82; *see also* 11 U.S.C. § 1123(b)(3).

[5]  *See* Confirmation Order, *supra* note 4 at ¶ 65.

To the extent that the causes of action asserted for (i) breach of fiduciary duty,[6] (ii) breach of contract,[7] (iii) aiding and abetting breach of fiduciary duty,[8] and (iv) conspiracy[9] may be non-core proceedings as described in 28 U.S.C. § 157(b)(2) because they arise under applicable nonbankruptcy law, such proceedings are "related to" the Debtors' jointly administered bankruptcy cases (the lead case, Case No. 15-32919-KRH, the "Bankruptcy Case"), and the Court may issue proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c)(1).[10] All of the claims asserted by the Liquidating Trustee that arise under applicable nonbankruptcy law are an integral part of the Plan because prosecution of those claims affects the implementation, consummation, execution, and administration of the Plan.[11] Further, all of

---

[6] Am. Tax Compl., *supra* note 3, at Counts 1 & 2.

[7] *Id.* at Count 3.

[8] *Id.* at Count 4.

[9] *Id.* at Counts 5 & 6.

[10] *See Arrowsmith v. Mallory* (*In re Health Diagnostic Lab., Inc.*), Nos. 3:17-cv-413-HEH, 2017 WL 3084626, at *3 n.5 (E.D. Va. July 19, 2017). The test for determining post-confirmation "related to" jurisdiction is whether a claim has a "close nexus" to the bankruptcy plan or proceeding such that it affects an integral aspect of the bankruptcy process. *Valley Historic Ltd. v. Bank of N.Y.*, 486 F.3d 831, 836-37 (quoting *Binder v. Price Waterhouse & Co.* (*In re Resorts Int'l Inc.*), 372 F.3d 154, 167 (3d Cir. 2004)) ("[M]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus."). Matters that are integrated into a debtor's plan as a means of recovery for the debtor's creditors are such matters even if they are referenced in the plan generally rather than specifically. *See Air Cargo, Inc. Litig. Tr. v. i2 Techs., Inc.* (*In re Air Cargo, Inc.*), 401 B.R. 178, 186-89 (Bankr. D. Md. 2008) (holding that adjudication of the lawsuit brought by the litigation trustee to recover funds for satisfaction of creditor claims necessarily affects the implementation, consummation, execution, and administration of the plan even though the assignment of the claims to the litigation trust was general rather than specific); *Guttman v. Martin* (*In re Railworks Corp.*), 325 B.R. 709 (Bankr. D. Md. 2005).

[11] *See Lain v. Erickson*, No. WDQ-11-3736, 2013 WL 6490263 (D. Md. Dec. 9, 2013) (finding the court had subject matter jurisdiction over a liquidating trustee's recovery of a state law claim because the plan provided for the claim, a trust created by the plan was prosecuting the claim, the claim would bring recovery to the debtors' creditors if successful, and the claim arose pre-petition); *see also Bos. Reg'l Med. Ctr., Inc. v. Reynolds* (*In re Bos. Reg'l Med. Ctr., Inc.*), 410 F.3d 100, 106 (1st Cir. 2005) (explaining that the rationale for distinguishing between plans of reorganization and liquidation is that a reorganized debtor maintains a tangential relationship with the bankruptcy proceedings while a liquidating debtor exists for the singular purpose of executing an order of the bankruptcy court, and any litigation involving such debtor relates much more directly to a proceeding under Title 11). The Liquidating Trustee, under the Plan and Confirmation Order, has sole authority and responsibility to prosecute the litigation claims in this Bankruptcy Case. *See* Plan, *supra* note 4 at §§ 6.4, 6.5.

the claims asserted in the Amended Tax Complaint under applicable nonbankruptcy law arose

pre-petition, are significant assets of the Debtors' estate, and are brought by the Liquidating

Trustee.  As there exists a close nexus between those claims, the Plan, and the Bankruptcy Case,

the Court has "related to" subject matter jurisdiction over the claims.[12]

Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  A

substantial part of the events or omissions giving rise to the claims asserted in the Amended

Tax Complaint against the Golias Defendants occurred in this judicial district.

## Background and Procedural History

HDL was a privately-held company based in Richmond, Virginia.  HDL offered clinical

laboratory services to physicians across the country.  HDL processed blood tests it received from

physicians and tested biomarkers in the blood samples it received for indicators of cardiovascular

disease, diabetes, and other illnesses.   HDL would reimburse the referring physicians for

collecting, processing, and handling the blood samples that they had sent to HDL for testing (the

"P&H Fees").  In January of 2013, the United States Department of Justice ("DOJ") and United

States Department of Health and Human Services' Office of Inspector General ("HHS OIG")

commenced an investigation into HDL in connection with certain suspect business practices,

including HDL's payment of P&H Fees to referring physicians as potential violations of the

federal anti-kickback statute.[13]  HHS OIG issued a special fraud alert on June 25, 2014, advising

that the payment of P&H Fees to referring physicians could violate federal anti-kickback laws.

---

[12]  Thus, whether the current proceedings are categorized as core or non-core under 28 U.S.C. § 157(b)(2), the Court retains jurisdiction over this matter.

[13]  42 U.S.C. § 1320(a)-7(b)(1)(A).  In addition to HDL's payment of unusually high P&H Fees to health care providers, the Liquidating Trustee also alleges HDL (i) entered into a sales agreement with BlueWave Healthcare Consultants, Inc. ("BlueWave") that compensated BlueWave sales representatives with a percentage-based commission of HDL's sales revenue in violation of the federal anti-kickback statute and (ii) established a policy of

In April 2015, HDL and HHS OIG reached a multi-million dollar settlement for alleged violations of the federal False Claims Act and entered into a five-year corporate integrity agreement, which required, inter alia, HDL to halt its payment of P&H Fees to referring physicians.  Subsequently, HDL descended into the financial turmoil that eventually led to bankruptcy.

### HDL's Corporate and Tax Structure

As of June 7, 2015 (the "Petition Date"), HDL had a four-member Board of Directors (the "Board"), which included Bartlett and Galen.  HDL had 19 shareholders, each of whom owned various percentages of stock.[14]  Due to its corporate and shareholder attributes, HDL had the capacity to qualify as a "small business corporation" as defined by section 1361(b) of Title 26 of the United States Code (the "Internal Revenue Code").

On or about February 16, 2009, HDL filed an election (the "S Corporation Election") to be classified as an S corporation under the Internal Revenue Code[15] pursuant to unanimous shareholder consent as required by section 1362(a)(2) of the Internal Revenue Code. Correspondingly, HDL filed S corporation elections with the State of New York Department of Taxation and Finance, the State of Arkansas Department of Finance and Administration, and the

---

not collecting co-payments, co-insurance payments, or deductibles from patients for HDL's services in violation of the federal anti-kickback statute and the Civil Monetary Penalties Law.  42 U.S.C. § 1320(a)-7(a).  The Amended Tax Complaint refers to these three activities collectively as HDL's "Illegal Business Practices" (the "Illegal Business Practices").  Am. Tax Compl., *supra* note 3, Ex. B at ¶¶ 7-10.

[14]  Tipton Golias owned 38.4795%; Joseph P. McConnell owned 12.8336%; LaTonya S. Mallory owned 8.9048%; George Russell Warnick owned 7.6236%; The Warnick Family 2012 Irrevocable Trust owned 7.2834%; Scott Mallory owned 6.0021%; Joseph Golias owned 5.21%; Donald Golias owned 2.605%; Karla Falgout owned 2.605%; The Joseph P. McConnell 2012 Irrevocable Trust owned 2.0734%; Floyd Calhoun Dent III owned 1.563%; Robert Bradford Johnson owned 1.563%; The Wyndell L. Golias Voting Trust owned 1.1164%;  Robert S. Galen owned 1.042%; Noel D. Bartlett owned 0.2605%; Eric Petersen owned 0.2605%; David Mayes owned 0.2605%; John Tessler owned 0.2605%; and Pamela Oates owned 0.0532%.  Satyanarain Rangarajan initially owned 5.1%, but HDL repurchased his stock in 2013.

[15]  *See* 26 U.S.C. §§ 1–1400u-3.

State of Mississippi Department of Revenue. Every other state where HDL did business either accepted the federal S Corporation Election or did not recognize S corporation status ("S Corporation Status") for qualifying corporations.[16] The operations of an S corporation are subject to only one level of taxation.[17] The company's income and losses are "passed through" to its shareholders, and the corporation itself is generally exempt from taxes imposed under Chapter 1 of the Internal Revenue Code.

In accordance with section 12(b) of the Shareholders' Agreement, HDL made distributions to its shareholders as means to reimburse them for HDL's pass-through tax liability.[18] HDL also made direct payments to the Internal Revenue Service (the "IRS") and the State Taxing Authorities on behalf of the shareholders.[19] Each year, HDL filed IRS form 1120S, which included a schedule K-1 for each shareholder ("Schedule K-1") as required by section 6037(c)(1) of the Internal Revenue Code. HDL submitted corresponding forms to the State

---

[16] Those tax authorities include the State of Alabama Department of Revenue, State of California Franchise Tax Board, State of Colorado Department of Revenue, State of Georgia Department of Revenue, State of Illinois Department of Revenue, State of Kansas Department of Revenue, Comptroller of the State of Maryland, State of Michigan Department of Treasury, State of Missouri Department of Revenue, State of North Carolina Department of Revenue, State of Ohio Department of Revenue, Commonwealth of Pennsylvania Department of Revenue, State of South Carolina Department of Revenue, State of Utah State Tax Commission, Commonwealth of Virginia Department of Taxation, and State of Wisconsin Department of Revenue (together with the State of New York Department of Taxation and Finance, the State of Arkansas Department of Finance and Administration, and the State of Mississippi Department of Revenue, the "State Taxing Authorities").

[17] C corporations, by contrast, are subject to two levels of taxation. Net income is subject to tax at the corporate level, and certain distributions, generally dividends, made by the corporation to the shareholders are subject to a second level of tax.

[18] HDL and the Golias Defendants entered into a shareholders' agreement dated June 23, 2009 (the "Shareholders' Agreement"), which provided the bases for the treatment of the pass-through income and the payments of taxes accruing thereon. *See* Am. Tax Compl., *supra* note 3, at Ex. D.

[19] The Amended Tax Complaint alleges that these distributions and payments conferred a benefit on the Shareholders in excess of $79 million for which HDL did not receive consideration deemed valuable in law or reasonably equivalent value. *Id.* at ¶ 50.

Taxing Authorities.  Personally, the shareholders included on their individual tax returns the income, deductions, credits, and other items displayed on the Schedules K-1.[20]

The Amended Tax Complaint alleges that, although HDL appeared to be generating substantial revenues and profits, which it freely distributed to the Shareholders, HDL was actually accruing millions of dollars in unrecognized liabilities due to its Illegal Business Practices.  The Amended Tax Complaint contends that HDL failed to account for the catastrophic liabilities its Illegal Business Practices were creating.  The Amended Tax Complaint alleges further that, at all relevant times, HDL was insolvent and the fair amount of its liabilities exceeded the fair value of its assets.

On January 1, 2015, HDL filed a Notice of Termination of HDL's S Corporation Status with the IRS and State Taxing Authorities.  As required by federal law, a majority of HDL's shareholders had voted in favor of revoking HDL's S Corporation Status.  The Amended Tax Complaint alleges that the Golias Defendants authorized the revocation of HDL's S Corporation Status instead of preserving HDL's S Corporation Status and complying with the provisions of the Shareholders' Agreement.  Consequently, as of the Petition Date, HDL was subject to C corporation tax.

*Bankruptcy Proceedings*

On the Petition Date, the Debtors commenced the Bankruptcy Case by each filing a separate voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the

---

[20]   HDL reported the following amounts of income/loss per return on IRS Form 1120S, Schedule K: 2011 ($19,356,406); 2012 ($126,852,431); 2013 ($20,533,302); 2014 ($19,541,772).

"Bankruptcy Code") in this Court.[21]  On June 16, 2015, the United States Trustee appointed the Committee.

Nearly two years later, on June 7, 2017, the Liquidating Trustee filed a complaint against the United States, State Taxing Authorities, and the Golias Defendants.[22]  The United States filed a motion to dismiss the Tax Complaint under Bankruptcy Rule 7012(b)(6).[23]  All but two of the defendants named in the Tax Complaint joined the United States' Motion to Dismiss.[24]  On December 6, 2017, this Court issued an Opinion[25] and an accompanying Order dismissing Counts 1, 2, 3, and 4 of the Tax Complaint on the grounds that S Corporation Status was not

---

[21]  On June 9, 2015, this Court entered an Order Granting Joint Administration.  *See* Order Granting Mot. for Joint Administration, *In re Health Diagnostic Lab., Inc.*, No. 15-32919 (Bankr. E.D. Va.), ECF No. 42.

[22]  *See* Adversary Compl., ECF No. 1 (the "Tax Complaint").

[23]  *See* United States' Mot. to Dismiss & Brief in Supp., ECF No. 4 (the "United States' Motion to Dismiss").

[24]  The following parties timely joined the motion: Karl F. Warnick, Kristan Warnick, and George Russell Warnick in their capacity as Trustees of the Warnick Family 2012 Irrevocable Trust, George Russell Warnick (individually), LaTonya S. Mallory, Scott Mallory, Tipton Golias (individually), Joseph Golias, Donald Golias, Karla Falgout, Tipton Golias in his Capacity as Trustee of the Wyndell L. Golias Voting Trust, Robert S. Galen, Noel D. Bartlett, Jr., Eric Petersen, David Mayes, John Tessler, Pamela Oates, Floyd Calhoun Dent, III, Robert Bradford Johnson, State of Alabama Department of Revenue, State of Arkansas Department of Finance and Administration, State of California Franchise Tax Board, State of Colorado Department of Revenue, State of Georgia Department of Revenue, State of Illinois Department of  Revenue, Comptroller of the State of Maryland, State of Michigan Department of Treasury, State of Mississippi Department of Revenue, State of Missouri Department of Revenue, State of New York Department of Taxation and Finance, State of North Carolina Department of Revenue, State of Ohio Department of Revenue, Commonwealth of Pennsylvania Department of Revenue, State of South Carolina Department of Revenue, State of Utah State Tax Commission, Commonwealth of Virginia Department of Taxation, and State of Wisconsin Department of Revenue.

The only two defendants named in the Tax Complaint who did not join in the motion were the State of Kansas Department of Revenue and Satyanarain Rangarajan.  Both of those parties had previously settled with the Liquidating Trustee.

[25]  Memorandum Opinion, ECF No. 54 (the "S Status Opinion").

property of the Bankruptcy Estates.[26]   The Court granted the Liquidating Trustee leave to file the Amended Tax Complaint, which was filed on January 15, 2018.[27]

## Analysis

### *Legal Standard*

The Golias Defendants in this action seek dismissal of Counts 1 through 6 of the Amended Tax Complaint pursuant to Bankruptcy Rule 7012(b), which incorporates Federal Rule of Civil Procedure 12(b).  A complaint must contain a "short and plain statement of the claim[s] showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).[28]   Under Federal Rule of Civil Procedure 12(b)(6), a court determines "whether the complaint, under the facts alleged and under any facts that could be proved in support of the complaint, is legally sufficient."  *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd.*, 213 F.3d 175, 180 (4th Cir. 2000) (citing *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991)).  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Furthermore, in considering the Motion to Dismiss, the Court must not only take as true the factual allegations in the Liquidating Trustee's Complaint but it must also view the Amended Tax Complaint in the light most favorable to the plaintiff.  *See Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 764-765 (4th Cir. 2003).

---

[26]  Order, ECF No. 55.

[27]  By order entered on February 7, 2018, this Adversary Proceeding was consolidated with Adversary Proceeding No. 16-03271 (the "D&O Complaint").   Order on Liquidating Tr.'s Mot. for Entry of Order Consolidating Adversary Proceedings for Purposes of Joint Admin. & Establishing the Tax Pretrial Protocol Governing the Initial Procedural Aspects of the Tax Compl., ECF No. 67.

[28]  Bankruptcy Rule 7008 incorporates Federal Rule of Civil Procedure 8.

*Counts 1 and 2: Breach of Statutory and Common Law Fiduciary Duty*

In Count 1 of the Amended Tax Complaint, the Liquidating Trustee asserts a cause of action against the Director Defendants for breach of fiduciary duty under Virginia Code section 13.1-690.  Virginia law requires directors of corporations to discharge their duties, including their duties as committee members, with "good faith business judgment of the best interests of the corporation."  Va. Code Ann. § 13.1-690(A) (2016).  If directors lack independent knowledge on certain matters, they are entitled to rely on the "information, opinions, reports or statements" of others when discharging their duties, provided the information comes from the corporation's officers or employees, professionals—such as lawyers and accountants—employed by the corporation, or a committee of directors that does not include the director in question.  *Id.* § 13.1-690(B).  Directors acting with good faith business judgment can use Virginia's Business Judgment Rule, set forth in Virginia Code section 13.1-690(C), to insulate themselves from liability.  Any person alleging a Virginia Business Judgment Rule violation bears the burden of proving the violation.  *Id.* § 13.1-690(D).

The Liquidating Trustee asserts in Count 2 of the Amended Tax Complaint a cause of action for breach of the common law fiduciary duties of due care and loyalty against the Director Defendants.  The creation of statutory fiduciary duties in Virginia has not abrogated the fiduciary duties owed by directors under common law.  *Willard v. Moneta Bldg. Supply, Inc.*, 515 S.E.2d 277, 284 (Va. 1999).  Rather, Virginia Code section 13.1-690 has simply "set the standard" by which the discharge of those common law duties is measured.  *Id.*

An allegation asserting a violation of a fiduciary duty requires a subjective inquiry.  A director's discharge of the duties owed under Virginia Code section 13.1-690(A) "is not measured by what a reasonable person would do in similar circumstances or by the rationality of

10

that ultimate decision." *Id.* Instead, the criteria for analyzing a director's decisions are "the subjective beliefs of the director" and "the process that the director employed." *Matson v. Alpert* (*In re LandAmerica Fin. Grp., Inc.*), 470 B.R. 759, 790 (Bankr. E.D. Va. 2012) (citing *WLR Foods, Inc. v. Tyson Foods, Inc.*, 155 F.R.D. 142, 145-46 (W.D. Va. 1994), *aff'd*, 65 F.3d 1172 (4th Cir. 1995)). Analyzing the process that the director employed includes examining the qualifications of persons with whom the director consulted, the general topics of information sought or imparted, and whether the director followed the advice obtained. *Id.* at 790-91 (citing *WLR Foods, Inc.*, 155 F.R.D. at 145-146).

A director of a Virginia corporation owes fiduciary duties "both to the corporation and to the corporation's shareholders." *Byelick v. Vivadelli*, 79 F. Supp. 2d 610, 623 (E.D. Va. 1999) (internal citations omitted). Once a Virginia corporation becomes insolvent, the fiduciary duties owed by directors also extend to the corporation's creditors. *Schnelling v. Crawford* (*In re James River Coal Co.*), 360 B.R. 139, 170 (Bankr. E.D. Va. 2007). "[W]hen a corporation becomes insolvent, or in a failing condition, the officers and directors no longer represent the stockholders, but by the fact of insolvency, become trustees for the creditors, and that they then cannot by transfer of its property or payment of cash, prefer themselves or other creditors." *Poth v. Russey*, 281 F. Supp. 2d 814, 826 (E.D. Va. 2003) (quoting *FDIC v. Sea Pines Co.*, 692 F.2d 973, 977 (4th Cir. 1982)), *aff'd*, 99 F. App'x. 446 (4th Cir. 2004). A corporation's directors "are bound to act in discharge of their duties with prudence, vigilance and fidelity, and to apply its assets, in the event of insolvency, for the benefit of the creditors in preference to the claims of stockholders or other persons." *Planters' Bank v. Whittle*, 78 Va. 737, 740 (1884).

In the case at bar, the Liquidating Trustee alleges that the Director Defendants breached the statutory and common law fiduciary duties of loyalty and care they owed to both HDL's

11

shareholders and HDL's Assigning Creditors[29] by engaging in self-dealing and wrongful acts. *See* Am. Tax Compl., *supra* note 3, at ¶¶ 96-114. The Liquidating Trustee pleads four specific types of conduct undertaken by HDL's Board, including the Director Defendants, to support this allegation. First, the Director Defendants allegedly directed and/or authorized the preparation and filing of materially false financial statements. Second, the Director Defendants allegedly directed and/or authorized the preparation and filing of materially false tax returns and subsequently failed to authorize the filing of amended tax returns to correct the prior inaccuracies. Third, the Director Defendants allegedly authorized HDL to terminate its S Corporation Status in a way that improperly benefited them as HDL shareholders. And fourth, in a theory not specifically stated in the Liquidating Trustee's Amended Tax Complaint but nevertheless supported by the facts contained therein, the Director Defendants allegedly failed to adequately supervise HDL's activities in a way that supports a cause of action under *In re Caremark International Inc. Derivative Litigation*. (*Caremark*) 698 A.2d 959 (Del. Ch. 1996).

The Liquidating Trustee has pleaded with sufficient particularity that the Director Defendants directed and/or authorized the preparation and filing of materially false financial statements. The Liquidating Trustee alleges that the financial statements prepared and filed by HDL while the Director Defendants were on the Board did not include the millions of dollars in unrecognized liabilities that HDL was incurring to the federal and state governments, private payers, and unsecured creditors. *See* Am. Tax Compl., *supra* note 3, at ¶ 56. The Liquidating Trustee alleges that HDL's financial statements overstated the company's assets by including revenues obtained through "improper activity." *Id.* at ¶ 61. According to these allegations, had

---

[29] The Assigning Creditors were unsecured creditors of the Bankruptcy Estates who transferred their causes of action to the Liquidating Trustee in accordance with section 6.16(a) of the Plan.

HDL accounted for its ever-growing liabilities and not included its ill-gotten revenues, the company's financial statements would have shown net losses during the time period the Director Defendants were on the Board. *Id.*

The Golias Defendants argue that the Amended Tax Complaint fails to identify the exact financial statements prepared after the Director Defendants joined the Board in October of 2014 that contain the materially false information. To the extent the Golias Defendants wish to challenge which, if any, of HDL's financial statements contained materially false statements and whether any such statements were prepared and filed after the Director Defendants joined the Board, the challenge "reflect[s] the existence of factual issues that may not be resolved in a Rule 12(b)(6) motion." *In re LandAmerica Fin. Grp., Inc.*, 470 B.R. at 792. Under Bankruptcy Rule 7008, the Liquidating Trustee bears only the burden of setting forth sufficiently particular facts that plausibly give rise to a claim. *See Iqbal*, 556 U.S. at 678-79. The allegations that the Director Defendants directed and/or authorized the preparation and filing of materially false financial statements meet the pleading standard under Bankruptcy Rule 7012(b)(6).

The Liquidating Trustee has pleaded with sufficient particularity that the Director Defendants directed and/or authorized the preparation and filing of materially false tax returns and failed to amend those returns. As with the allegations concerning financial statements, the Liquidating Trustee alleges that the tax returns filed while the Director Defendants served on the Board overstated revenues and understated liabilities being generated by the Illegal Business Practices. Am. Tax Compl., *supra* note 3, at ¶ 61.

The Golias Defendants reiterate that the Liquidating Trustee has failed to identify the materially false tax returns that were prepared and filed after the Director Defendants joined

HDL's Board and insist the Liquidating Trustee is wrong as a matter of law.[30]  The Golias

Defendants contend that IRS guidelines instruct filers to include revenue obtained from illegal

activities when filing tax returns.  Motion to Dismiss Memorandum, *supra* note 30, at 4.  The

Golias Defendants also maintain that any liabilities HDL may have accrued under the False

Claims Act would not affect HDL's taxable income under the "all events test" of the IRS until

HDL actually paid some portion of its settlement with DOJ.  *Id.* at 4-5 (citing 26 U.S.C.

§ 461(h)(1); 26 C.F.R. § 1.461-4(a)(1)).   Any attempt to deduct those liabilities prior to

economic performance, the Golias Defendants argue, would have violated applicable law and

regulations.

    These arguments are not persuasive at the motion to dismiss stage.  The appropriate tax

treatment of revenues generated by HDL under its Illegal Business Practices is a factual inquiry.

Furthermore, the Liquidating Trustee has alleged liabilities that HDL incurred in addition to

those under the False Claims Act and maintains that liabilities to private insurers would have

been deductible on HDL's tax returns.  Determining HDL's potential deductions is yet another

factual inquiry that cannot be decided at this stage in the Adversary Proceeding.

    The Liquidating Trustee has pleaded with sufficient particularity that the Director

Defendants contravened the fiduciary duties of due care and loyalty when they authorized and

directed HDL to revoke its S Corporation Status.  The Liquidating Trustee alleges that the

Director Defendants first proposed revoking HDL's S Corporation Status (the "Revocation") in a

November 12, 2014, email to the other members of the Board.  *See* Am. Tax Compl., *supra* note

3, at ¶¶ 73-74, Ex. F.  The Revocation occurred on the record at a later Board meeting.  *Id.* at

---

[30]  Mem. of Law in Supp. of Mot. of Defs. Tipton Golias, Joseph Golias, Donald Golias, Karla Falgout, Tipton
Golias in his Capacity as Trustee of the Wyndell L. Golias Voting Trust, Robert S. Galen, Noel D. Bartlett, Jr., Eric
Petersen, David Mayes, John Tessler, & Pamela Oates to Dismiss, ECF No. 74 ("Motion to Dismiss
Memorandum").

¶ 78.  Taken in the light most favorable to the Liquidating Trustee, these allegations give rise to an inference that the Director Defendants acted in their own self-interest as shareholders and not to protect HDL or its creditors in their capacities as directors.  A factual inquiry regarding why Revocation occurred is necessary in order to determine whether the Revocation amounted to a breach of the Director Defendants' fiduciary duties.  These allegations in Counts 1 and 2 satisfy the relevant pleading standard.

A fourth type of conduct identified by the Liquidating Trustee supports an alternate theory of liability under Counts 1 and 2 of the Amended Tax Complaint.  The Liquidating Trustee has pleaded facts giving rise to corporate mismanagement claims against the Director Defendants for failing to adequately supervise HDL's activities under *Caremark*.  698 A.2d 959. To state a claim under *Caremark*, the Delaware Court of Chancery explained that a plaintiff must allege that: "(1) the directors knew or (2) should have known that violations of law were occurring and, in either event, (3) that the directors took no steps in a good faith effort to prevent or remedy that situation; and (3) that such failure proximately resulted in the [alleged] losses . . . ."  *Id.* at 971.  The Fourth Circuit has recognized that *Caremark* is a "leading case in this area" and its holding is sufficient to support a cause of action under section 13.1-690 of the Virginia Code.  *See Dellastatious v. Williams*, 242 F.3d 191, 196 (4th Cir. 2001).

The allegations in the Amended Tax Complaint do establish a viable cause of action against the Director Defendants for failing to reasonably supervise HDL's activities related to the preparation of financial statements and filing of tax returns.  Am. Tax Compl., *supra* note 3, at ¶¶ 60-79.  Despite the Golias Defendants' contention that the Liquidating Trustee did not explicitly cite to *Caremark* in the Amended Tax Complaint, the Liquidating Trustee raised the possibility of a *Caremark* claim at oral argument and has adequately pleaded facts which, taken

15

in the light most favorable to him, would satisfy the pleading requirements under the Bankruptcy

Rules.

The Motion to Dismiss with respect to Counts 1 and 2 will be denied.

*Count 3: Breach of Contract*

In Count 3, the Liquidating Trustee asserts a breach of contract action against the Golias

Defendants, alleging a violation of the covenant of good faith and fair dealing implied in the

Shareholders' Agreement.  The covenant of good faith and fair dealing is implied in all Virginia

common law contracts.  *Stoney Glen, LLC v. S. Bank & Trust Co.*, 944 F. Supp. 2d 460, 465

(E.D. Va. 2013) (citing *Wolf v. Fed. Nat. Mortg. Ass'n*, 512 F. App'x. 336, 345 (4th Cir. 2013)).

A party to a contract alleging a violation of the implied covenant must bring a claim for breach

of contract.  *See Charles E. Brauer Co. v. NationsBank*, 466 S.E.2d 382, 385 (Va. 1996).  There

are two methods by which a plaintiff can show a breach of the implied covenant of good faith

and fair dealing: (1) where a party has a clear contract right and the party acts dishonestly or

(2) where a party has discretion in performance and acts arbitrarily or unfairly.  *See id.*; *Mahoney

v. NationsBank*, 455 S.E.2d 5, 8 (Va. 1995).   In this case, the Liquidating Trustee seeks to

recover damages from the Golias Defendants on the basis that the Revocation of HDL's S

Corporation Status was not made in good faith and harmed the Debtors and Assigning Creditors.

As a threshold matter, the Golias Defendants assert that this claim should be dismissed

under the Law of the Case Doctrine because the Court has already held that the Golias that when

a court decides upon a rule of law, that decision should continue to govern the same issues in

subsequent stages in the same case."  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800,

815-16 (1988).  The Golias Defendants argue that the Court necessarily decided this issue by

holding the S Corporation Election was not property of the bankruptcy estate, and—pursuant to

the Law of the Case Doctrine—the S Corporation Election decision applies throughout the rest of this Adversary Proceeding.  *See* S Status Opinion, *supra* note 25, at 23-24.

The Court disagrees.  The Law of the Case Doctrine is inapplicable to the case at bar. The sole issue before the Court when it released its S Status Opinion was whether HDL's S Corporation Status was property of the bankruptcy estate under section 541 of the Bankruptcy Code.   Whether the Golias Defendants breached the Shareholders' Agreement was not determinative of that issue, so the Court refrained from answering that question.  Thus, the Law of the Case Doctrine does not preclude the Court from considering the breach of contract claim at this time.

The Golias Defendants contend next that the Liquidating Trustee is precluded from bringing this breach of contract claim because the Debtors rejected the Shareholders' Agreement during their Bankruptcy Case.  Section 365(a) of the Bankruptcy Code provides, in relevant part, that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."   11 U.S.C. § 365(a).  The fact that the Debtors rejected the Shareholders' Agreement under section 365(a) is uncontroverted, and the Debtors acknowledge as much in their own pleadings.  *See* Confirmation Order, *supra* note 4, at ¶ 59 ("[T]his Confirmation Order constitutes an order under section 365 of the Bankruptcy Code rejecting all prepetition executory contracts and unexpired leases to which any Debtor is a party . . . ."); *see also* Supplemental Support and Decisional Authority with Respect to Application of Bankruptcy Code Section 365, ECF No. 93 (referring to "the Debtors' rejection of the Shareholders' Agreement").  It is the consequence of that rejection that is disputed.

If a trustee chooses to reject an executory contract, the rejection "constitutes a breach of such contract . . . immediately before the date of the filing of the petition."   11 U.S.C. § 365(g).

The breach that is triggered by rejection does not terminate the underlying contract.  *See, e.g.*, *Eastover Bank for Sav. v. Sowashee Venture* (*In re Austin Dev. Co.*), 19 F.3d 1077, 1082-83 (5th Cir.) ("Congress knew how to authorize the termination of executory contracts and leases in § 365.  'Termination' is used in § 365(h), (i), and (n) . . . . [I]n none of these subsections is rejection or disaffirmance equated with termination.").  Rather, "[t]he rights and obligations of a debtor and a non-debtor party to an executory contract are essentially the same after rejection of the contract as they would have been if the contract had been breached by the debtor prepetition."  *In re Alongi*, 272 B.R. 148, 154 (Bankr. D. Md. 2001).  Any damages suffered by a non-debtor as a result of the rejection of a contract "are treated as a pre-petition claim" against the estate "and receive the priority provided to general unsecured creditors."  *Stewart Foods, Inc. v. Broecker* (*In re Stewart Foods, Inc.*), 64 F.3d 141, 144 (4th Cir. 1995) (citing 11 U.S.C. §§ 365(g)(1), 502(g); *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984)).  Likewise, if the debtor has a claim under the contract arising out of a pre-petition event, "the debtor's claim for those sums is undoubtedly an asset of the estate which passes to the trustee . . . ."  *Delightful Music Ltd. v. Taylor (In re Taylor)*, 913 F.2d 102, 106 (3d Cir. 1990); *see also Lauter v. Citgo Petroleum Corp.*, No. H-17-2028, 2018 WL 801601, at *15 (S.D. Tex. Feb. 8, 2018) ("Rejection did not cut off the right of Gas–Mart's estate . . . to pursue claims based on pre-petition breaches of the Agreement.").

As the Debtors' rejection of the Shareholders' Agreement in the case at bar constituted a breach under section 365(g) of the Bankruptcy Code, the Golias Defendants may be entitled to assert a breach of contract claim—to the extent such a claim exists—against the Liquidating Trustee.  A claim of this nature would be considered a liability of the Bankruptcy Estates and accorded the status of a general unsecured claim.  It is also clear that, to the extent the Golias

Defendants breached the covenant of good faith and fair dealing implied in the Shareholders' Agreement before the Petition Date, any claim the Debtors would have held against the Golias Defendants is an asset of the Bankruptcy Estates that has now passed to the Liquidating Trustee.

The Liquidating Trustee has sufficiently pleaded facts which satisfy the requirement that the breach of contract claim arose pre-petition. The Liquidating Trustee alleges that the Board first explored the idea of revoking the company's S Corporation Status at an October 31, 2014, board meeting. Am. Tax Compl., *supra* note 3, at ¶ 72. The Liquidating Trustee alleges that the Board voted to recommend that the HDL shareholders ratify the Revocation on December 11, 2014. *Id.* at ¶ 78. And the Liquidating Trustee alleges that HDL filed a Notice of Termination of its S Corporation Status with the IRS and State Taxing Authorities on January 1, 2015. *Id.* at ¶ 80. All of the Liquidating Trustee's allegations in support of the breach of the implied covenant of good faith and fair dealing occurred well before the Petition Date of June 7, 2015. Accordingly, the Revocation of the S Corporation Status by the Golias Defendants that gave rise to the breach of contract claim was not affected by the Debtors' decision to reject the Shareholders' Agreement.

Finally, the Golias Defendants argue that the covenant of good faith and fair dealing is inapplicable in this instance because the Golias Defendants merely exercised their statutory and contractual *rights* to revoke the S election. The decision was not one of contractual *discretion*. Motion to Dismiss Memorandum, *supra* note 30, at 9. The distinction between the two is critical under Virginia law. A party exercising its rights can only breach the implied covenant of good faith and fair dealing when acting dishonestly whereas a party exercising its contractual discretion can do so by acting unfairly or arbitrarily. The Court determined in its S Status Opinion that the shareholders could, under federal tax law, revoke the S election under

provisions set forth in the Shareholders' Agreement.  The question of law before the Court at this juncture is whether those contractual provisions were exercised by right or pursuant to contractual discretion.

The Court finds that the Golias Defendants' decision to revoke HDL's S Corporation Status was discretionary.  The Shareholders' Agreement was a valid and binding agreement between the Golias Defendants and HDL.  Section 12 of the Shareholders' Agreement provided it was the intent of HDL to "maintain the S election" and that it could only be revoked with a two-thirds supermajority vote of the Shareholders.  Whereas non-discretionary rights arise under a contract upon the occurrence of a specified event, discretionary rights do not arise based on the occurrence of an objective, undisputed event.  Discretionary rights are committed to the party's determination, discovery, or will.  *Stoney Glen, LLC*, 944 F. Supp. 2d at 468-69.  Here, the Golias Defendants were not contractually bound to the course of action they chose when they voted for Revocation.  The Shareholders' Agreement did not require the Golias Defendants to vote or abstain from voting for the Revocation based on the occurrence of a certain event.  The Golias Defendants could vote for Revocation at any time, and the Golias Defendants chose to exercise their discretion under the Shareholders' Agreement and vote for the Revocation.

Knowing that the Golias Defendants had discretion in their performance under the Shareholders' Agreement, the Liquidating Trustee has pleaded a plausible claim for a violation of the implied covenant of good faith and fair dealing.  The Liquidating Trustee has alleged that the Revocation was tax neutral to the Shareholders but it impaired HDL's ability to utilize tax benefits in the form of losses or credits, which would otherwise be available to HDL and its creditors.  Am. Tax Compl., *supra* note 3, at ¶¶ 82-92.  Additionally, the Liquidating Trustee has alleged that the Golias Defendants ignored or failed to consider the effect of the Revocation on

their abilities to seek tax refunds, which would have made retaining HDL's S Corporation Status

tax neutral from the Golias Defendants' perspective and avoided significant harm to HDL and its

creditors.  *Id.*  Taken in the light most favorable to the Liquidating Trustee, these allegations are

sufficient to satisfy the pleading requirements of the Bankruptcy Rules and will not be dismissed

at this stage.  The Motion to Dismiss as to Count 3 will be denied.

*Count 4: Aiding and Abetting Breach of Fiduciary Duty*

The Liquidating Trustee asserts a cause of action for aiding and abetting a breach of

fiduciary duty against the Golias Defendants in Count 4.  A cause of action for aiding and

abetting a breach of fiduciary duty has been recognized by the Fourth Circuit and Virginia

courts.  *See Schnelling v. Crawford (In re James River Coal Co.)*, 360 B.R. 139, 174 (Bankr.

E.D. Va. 2007) (citing *Kieft v. Becker*, 58 Va. Cir. 171, 171 (2002); *Sherry Wilson & Co. v.

Generals Court, L.C.*, No. 21696, 2002 WL 32136374, at *1 (Va. Cir. Ct. Sept. 27, 2002)); *cf.

Tysons Toyota, Inc. v. Globe Life Ins. Co.*, 45 F.3d 428 (4th Cir. 1994).  A prima facie case for

aiding and abetting breach of fiduciary duty is established by proving the Golias Defendants,

with knowledge, offered substantial assistance to the directors in connection with the breaches of

their fiduciary duties.  *See id.*

In Counts 1 and 2, the Liquidating Trustee pleaded with sufficient particularity the

underlying breach of both the statutory and common law fiduciary duties of care and loyalty that

were owed by the Director Defendants.  The Liquidating Trustee alleges in Count 4 that the

Golias Defendants offered the Director Defendants substantial assistance in connection with

those breaches of fiduciary duty.  The Liquidating Trustee claims further that the Golias

Defendants knew about HDL's materially misleading financial statements and tax returns and

nevertheless authorized and/or directed the Board to file them.  Am. Tax Compl., *supra* note 3,

at ¶¶ 61-63.  The Liquidating Trustee asserts that the Director Defendants were appointed to the

Board in October 2014 "at the request of the Golias Family Shareholders."  *Id.* at ¶ 71.  And it is

alleged that Tipton Golias attended the October 31, 2014, board meeting where the Board

explored the possibility of converting HDL from a C corporation to an S corporation and "was a

participant."  *Id.* at ¶ 72.  The Court finds the Golias Defendants' argument that the Director

Defendants did not breach the fiduciary duties as alleged in Counts 1 and 2—thus negating any

cause of action for aiding and abetting the breach of those duties—unpersuasive at the motion to

dismiss stage.  Accordingly, Count 4 satisfies the Bankruptcy Rules' pleading standard, and the

Motion to Dismiss will be denied with respect to this cause of action.

*Counts 5 and 6: Common Law Conspiracy and Statutory Business Conspiracy*

The Liquidating Trustee asserts two conspiracy claims against the Golias Defendants in

the Amended Tax Complaint.  In Count 5, the Liquidating Trustee alleges a cause of action for

common law conspiracy against the Golias Defendants.  Common law conspiracy consists of two

or more persons who combine to accomplish, by some concerted action, an unlawful purpose or

some lawful purpose by unlawful means.  *Commercial Business Sys., Inc. v. BellSouth Servs.,

Inc.*, 453 S.E.2d 261, 267 (Va. 1995) (citing *Hechler Chevrolet v. Gen. Motors Corp.*, 337

S.E.2d 744, 748 (Va. 1985); *Werth v. Fire Cos.' Adjustment Bureau*, 171 S.E. 255, 259 (Va.

1933)).

The Liquidating Trustee brings a statutory business conspiracy claim under Virginia

Code sections 182-499 against the Golias Defendants in Count 6.  Virginia statutory business

conspiracy consists of two or more persons combining, agreeing, or mutually undertaking to

willfully and maliciously injure another in his reputation, trade, business, or profession.  *See id.*

at 266-67.  Virginia statutory business conspiracy differs from common law conspiracy because

the plaintiff must demonstrate that the defendant acted with "legal malice," that is "intentionally, purposefully, and without lawful justification." *See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 108 F.3d 522, 527 (4th Cir. 1997) (quoting *Commercial Business Sys., Inc.*, 453 S.E.2d at 266-67). But it is not necessary for the plaintiff to prove the defendant's "primary and overriding purpose" in the conspiracy was to injure another's trade or business. *Advanced Marine Enters. v. PRC Inc.*, 501 S.E.2d 148, 154-55 (Va. 1998). Rather, if the intent to injure another's trade or business was merely one reason for the defendant's actions, the statutory standard is met. *Id.*

The Court has found that the Liquidating Trustee has stated a plausible claim for aiding and abetting a breach of fiduciary duty in Count 4 of the Amended Tax Complaint. *See* Am. Tax Compl., *supra* note 3, at ¶ 131. This allegation involves two or more persons, the Golias Defendants and the Director Defendants, combining to take concerted action. Viewed in the light most favorable to the Liquidating Trustee, this allegation sufficiently establishes either "unlawful means" used to advance a lawful purpose (assisting in the violation of a fiduciary duty) or an overarching "unlawful purpose" (HDL's Illegal Business Practices that contravened the anti-kickback statute). Thus, the Liquidating Trustee has pleaded a claim for common law conspiracy that survive challenge under Bankruptcy Rule 7012(b)(6).

The Golias Defendants assert that the Liquidating Trustee has not met the burden of adequately pleading legal malice in Count 6. The Court finds the allegations contained in the Amended Tax Complaint do set forth a viable claim under Virginia law for statutory business conspiracy. The Amended Tax Complaint alleges that the Golias Defendants acted in their own self-interest at the expense of HDL by voting to revoke HDL's S Corporation Status to prevent themselves from becoming personally obligated to make tax payments HDL was unable to make.

Am. Tax Compl., *supra* note 3, at ¶¶ 134-41.  Notably, the Liquidating Trustee asserts that "the defendants' wrongful conduct was aimed directly at damaging the Debtors, including the Assigning Creditors."  *Id.* at ¶ 137.  This allegation, taken in the light most favorable to the Liquidating Trustee, is sufficient to plead legal malice.  If the Golias Defendants were acting with the intent to damage the Debtors and the Assigning Creditors, they were acting "intentionally, purposefully, and without lawful justification" to injure another in her business.  Even if this was not the primary motivation for their action, the Liquidating Trustee's statutory business conspiracy claim has been pleaded with sufficient particularity.

The Motion to Dismiss as to Counts 5 and 6 will be denied.

## Conclusion

The Court finds that the Amended Tax Complaint complies with the pleading requirements set forth in the Bankruptcy Rules.  The Liquidating Trustee has pleaded with sufficient particularity facts that give rise to plausible claims for (1) breach of fiduciary duty; (2) breach of contract; (3) aiding and abetting a breach of fiduciary duty; and (4) conspiracy.  Under the standard provided by Federal Rule of Civil Procedure 12(b)(6) and incorporated into Bankruptcy Rule 7012(b)(6), the court will deny the Motion to Dismiss as to all claims and counts.

A separate order shall issue.

ENTERED:   September 26, 2018


Entered on Docket:  September 26, 2018

/s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE